Let's call the next case, 17-4096, Derma Pen v. 4EverYoung. We have 17-4105, Derma Pen v. 4EverYoung on the briefs. Mr. Clayton, you may proceed. Thank you, Your Honor. And I'd like to thank the Court for allowing us to be heard today. I would also like to recognize on the record my associate, Owen Johnson, who, even though he doesn't appear in any filings to date, has been an integral part in preparing this appeal. Welcome. Thank you. Your Honor, I need to make clear to you that the record at the trial court below does not show the, quote, willfulness, bad faith, or fault, close quote, on the part of my client which is necessary by the MEN, quote, the fluids dynamics, excuse me, control fluidics case from 1987 of Death Circuit, which requires for a finding of default judgment. Does the Court make a finding of willfulness or fault? The Court doesn't do that. The Court makes other findings earlier in the case, but at the time, pertinent time, and I'll get to this in just a moment, the pertinent time that the default was being considered, the actions of my client that resulted in the default, there was no willfulness, bad faith, or fault on the part of my client. In fact, my client communicated with the judge, which I'll get to in just a minute. We believe that because of that, the district court abused its discretion by entering the default judgment without making a proper finding on the record. My client's lack of compliance with the January 20th, 2017 order, which required that counsel appear by January 30th, 2017, noon, noon, wasn't due to bad faith, willfulness, or fault. He tried. My impression was the judge was simply exasperated, and this was the last straw. Is that not a ground you have to show the most egregious conduct at each stage, or can the judge, after a lot of egregious conduct, say anything more, that's it? I understand your point. This case did not proceed perfectly, and I did not become involved with this case until very recently. That's the understatement of the year. We're not going to try to argue otherwise. But you can't take the sanction of default and apply it based upon everything that's gone before when the judge says, in the January 2017 order, you have to get counsel by this date in ten days. Why can't you? Because it's inappropriate. We have to give people the opportunity to be heard, give them the opportunity to conduct themselves in accordance with the judge's order. He could have entered pro se. Well, he could have, but remember, let me get there, okay? We will get there. But under the M.E.N. Coe case, which requires those three possibilities to enter the default, the court also did not make a record regarding the Enron House v. Reynolds 1992 criteria, both of which are precedent in this circuit. And the court needs to respect this court. The trial court needs to respect this court and make the proper findings on the record, which was not done. But when it struck the counter forever, Young's counterclaims, didn't it? That's right. It already walked through Erin House. It did. So we know that. Excuse me, Your Honor. As Judge Hartz was saying, you know, we're, what, a month or a year down the road, and, you know, it's still complicated. Well, actually, it was a year before. 2016, approximately. Right. That, rather, approximately a year before, in 2016. We know the court knows to apply the Enron House factors, but in the case of the default, he decided not to, apparently, because we know he knows. He applied them months earlier. Maybe he's, can you interpret it as he's incorporated by reference, more or less? Well, he should have done that on the record if he was going to have that default judgment stand up before Your Honors. Now, I'm going to propose, and the right way to go about this is look at the period of time that my client's behavior needs to be considered, and that is January 20th, 2017, to January 30th, 2017. Now, you don't have to just look at those factors, but that, those dates, but those dates are the ones that are important. Those are the ones that are fair to judge my client on. So, January 20th, the trial court renders an order allowing the Workman Nidegger firm to withdraw. Also in that order, it required that new counsel must appear by noon, January 30th, 2017, and new counsel must irrevocably appear through full resolution of this case, close quote, as well as any appeal of this case. Now, my client did his best. He's a small business person. He resides in Australia. He has business contacts, business dealings all over the world. He did his very best to comply, and I have in my hand a print from the trial court's record, document 1000, which was entered into the record on January 30th, 2017. It's an email from my client directly to the judge, and it's dated that day at 1148 a.m. This is a fact, trying to comply, asking the judge to give him one more week to find counsel. And he has talked, he has consulted with an attorney, local attorney, names the attorney, and says they're doing their conflicts check. And moreover. Is it inappropriate for the judge to consider whether he's come up with counsel as promised in the past? I don't think it's inappropriate, but most important, the judge has to, I'm going to go back to this, has to go back to the MEN Co. and the Enron House factors. He's got to make a record to make sure that it's fair to do the default against my client. Did I answer your question? Go ahead. Okay, thank you. What about inter pro se, my old question? Well, forgive me, the clients in Australia, business people, he should have. But he did not, and he did shortly after. I believe it was a month later when he did enter a pro se appearance. But I believe he had, once again, I'm just going to hold this up, document 1000. He had been talking to counsel. I believe he had a good faith belief that he was going to have counsel appear so that all the parties, including the business entity parties, could be represented. So in his mind, why should I make a pro se appearance? And you're representing Marshall? Yes, only Mr. Marshall. Does he have standing? Your Honor, what we believe is the correct result here is that we take this case and put it back before January 30, 2017, when default was entered. And then my client will have the opportunity to defend himself on the merits, on all of the remedies that were exerted against him in the final judgment. Because he's still liable under alter ego, is he not? But, Your Honor, that's one of the things that we will attack. Strike that. All we can look at is the present status of the case. I mean, would haves and should haves will get you somewhere, but not too far here today. I understand your position. But if we are reversed and remanded, reverse the default judgment, remand, my client will have the opportunity to defend himself. But you have to have standing today to be here, right? You are correct, Your Honor. And that's why we're here, because the default judgment was inappropriately rendered, without proper findings on the record. And if we go back, my client will then have the opportunity to defend on the merits this case. And defend on the merits means to you to somehow do away with the alter ego? Including others. Inclusions? Yes. But that specifically as well? Yes, you are correct, Your Honor. You are correct. So, the other side's arguments will be addressed. The standing, mootness, those arguments are addressed if you put this case back where it should be before the trial court entered the default. That's what we are seeking here. Reverse and remand to the point where the trial court improperly entered without considering the in-run house factors and the proper factors under men co. We need to go back to that point. Now, as just as another good faith trying to work on this, along with the e-mail of January 30, 2017, at 11.48 a.m., my client also submitted a formal looking paper asking for a continuance to file a new counsel, to get a new counsel to appear. Now, once again, we believe that the... And those two documents, the e-mail and this document you just held up, they're in our record? Yes. It's 1000-1 and 1000 in the lower court's record. And they help you because they read about disobedience? It's not disobedience. It's willfulness, willful disobedience. Sorry, Your Honor, you're right. We can say it that way. You can't show disobedience when the client is reaching out and trying to get this to work. Now, in terms of judicial efficiency, let me bring up an additional point, and that is... You didn't move... And I know there's a history here, but you didn't move for reconsideration after default was entered, or did you, in the district court? My recollection... Pointing out the failure to create this record that you're... My recollection is that Mr. Marshall, acting pro se, did not do that. Okay? I'm going to move on to another point. Did he file the notice of appeal, or did you? He contacted... I thought, well, no, he filed the notice of appeal. I will admit to the court I prepared it for him. Okay. Okay? So he did get counsel somewhere along the line here. But... I hope you can pay for it. I'm sorry, Your Honor. Never mind. Now, very briefly, because I wanted to save some time for rebuttal, I want to get to the remaining issue of the extraterritorial effect of the Lanham Act. Judge... Excuse me. The trial court's final judgment indicates that defendants, officers, agents, and it goes on and on and on, are hereby enjoined to destroy all packaging containers that have everything that has Dermapen on it. That's page three of the May 8th, 2017, final judgment, paragraph D. And that has no geographic limitations. This has real impact on my client, because when customers in some other country sees what a U.S. judge ordered be done, it is a problem in many cases. And hence, we need to get guidance on the extraterritorial effect of the Lanham Act, clearly the U.S. But we would urge the court to adopt the Vanity Fair test from the Second Circuit, 1956, or perhaps more appropriately, the Trader Joe test from the Ninth Circuit from 2016, to determine if the trial court's impact injunction can have effect outside of the United States, as our interpretation is it does, the way it was written and rendered. Thank you. How does Marshall have standing to challenge that, the scope of the injunction? Because it impacts him as much as it does any of the business defendants. This is binding upon him, unless we fix the situation here. Very good. All right, let's hear from wherever you're on. Mr. Landau? May it please the Court. Clemens Landau on behalf of Dermapen and the other counterclaim defendants. I'd like to just clear up that this hasn't proceeded perfectly, is really the understatement of the year, maybe the decade, just to give some insight on the timeline here, and how the Aaron House orders interlocked with this January 2017 order. So in August 2016, we have a very thorough order from Judge Neufer, listing out the Aaron House factors and dismissing the counterclaims. Two months later, we have a docket entry that says, based on the reasoning in docket 928, we are now striking all the pleadings. So at that point, the only question really that remains is, not is there going to be a default judgment, but what is the amount of the default judgment going to be? At that point, Curtin McConkie enters an appearance and makes a number of arguments. They file six papers. They don't make any of the arguments that are before you on appeal. They make different arguments. And then after a few more weeks, they're not getting paid either, so they're forced to withdraw. At that point, we object to the withdrawal. We say, keep them in the case until these six motions are resolved and the case is over, or exercise your discretion and give them a little less time in the 21 days. Because we've been around the carousel a number of times now, and we've given them 21 days on four other occasions. They've taken up to three months on other occasions. We've bent over backwards at every step. And each time they hire someone, they don't pay them, and it just kicks the can a little bit down the road. And meanwhile, and they don't contest this, they are peddling their infringing wares around the U.S. at trade shows. Pretty much in the very same time frame where they're supposed to be entering an appearance in the district court, they are out making business decisions to invest their money elsewhere, as opposed to investing in attorneys. Now, we get to the January, and I think their closest case is the Peskarsky case out of the Second Circuit.  In Peskarsky, we had a very complicated securities claim. The old firm was not releasing the client's records and their files, and the district court gave the client 10 days to find new counsel. And the Second Circuit said, you know, this is a little bit of an extraordinary situation, and under that circumstance, you've got to do more than give the person 10 days. Here, we have 10 days after this is, I believe, the sixth firm to withdraw for nonpayment. We have a clear record of abusive practices by the litigant. And Judge Newford has had enough, and he says, you have 10 days. And standing here today, I still haven't heard a reason that Judge Timkovich, your question, why he didn't just enter a pro se appearance. To preserve any of these arguments for today, he could have entered a pro se appearance, said, wait a minute, I think I have standing to pursue not only my claims, but claims on behalf of all these entities, and I'd like to go forward. And, by the way, it's not, you know, because he's given no reason. He said, well, you know, I've been distracted by serious family issues, the summer holiday period. Everything under the sun distracts this man from this lawsuit. And we don't have any evidence in the record that he's having financial difficulties. He's investing in selling these infringing products all over the country, so he must have some resources. He seems to be able to come up with a retainer every six months to get a new firm involved. What do you do about the lack of the record, though, for the Ehrenhaus factors? Well, again, the Ehrenhaus factors are completely addressed in docket 928. They're incorporated into 950. And those are the landmarks where the pleadings and the papers are stricken. Then Judge Newford's order of January 2007 doesn't, you know, rediscuss the Ehrenhaus factors, because understandable, he's already done that. But even so, he does address that, look, you've been warned, and I believe there's subsequent findings in the default judgment that enters an award of damages where each of the findings are there to support each of the prongs. And then there's no case from this circuit that says, look, in order for this not to be an abuse of discretion, the district judge has to go through each of these factors. I'm going to ask what's probably a very stupid question, so try to answer it in a way that is least embarrassing to me. Okay. I don't understand what you mean. Should we let some of these people go? I don't understand what you mean by entering a pro se appearance. If you're sued and you answer, the attorney may have to enter an appearance, but why does the client have to enter an appearance? What sort of document does a pro se client enter? I was a little confused about that. Oh, I see. Gosh, I wish I had the docket number. So two months after he's told to do it, he finally does it in April 2017. But is that standard practice for pro ses? I think so. Appearance as opposed to just answering? I believe it's standard. I generally practice. A formal notice of appearance. Yeah. By a pro se litigant. Yeah. I'm here. I'm going to be representing myself. Okay. And I think that's important because there are. Is that a legal rule? As I stand here, I can't think of a rule right now. I'm surprised that that was being demanded. I would have assumed that the purpose of entering an appearance is so you know who to serve with stuff. Right. And you can always serve the party if that person isn't represented. Well, and here, again, we had a history of Mr. Marshall saying, no, I'm not going to enter an appearance on my behalf. Which meant what? For a time. And what did that mean? And I'm going to do it within 48 hours. And then we'd wait two months. And all of a sudden, the appearance would come. Well, what does that mean for him not to enter an appearance? That you can't serve anybody with the pleading? Can't you still serve? I'm sorry. I'm. And I don't. Again, I'm not. I'm going to make an excuse. And that argument's nowhere in the brief. So I really don't know what to tell you on that. But that the way this litigation project, with all its moving parts, was handled by Judge Neufer. And I think he does get to manage his docket in this way, is to say, look, I want to be clear as to who's representing who and who's proceeding pro se. Well, let me ask this. Yeah. Because I gather part of it was that no one was responding. No. And that's what was frustrating. So it wasn't so much that he didn't enter an appearance, is that he wasn't responding and he wasn't having anyone else respond. But the judge could have found him responsible for not responding without his entering an appearance. And the judge did look at. So docket number 1,000 and 1,009. He had a track record of, you know, either on the last day at midnight or on three days after the last day, you'd find something. But if, you know, he had a month until the evidentiary hearing. And then on February 28th, the day before, you get docket 109 or 1,009. 1,009. This case has been going. You know, it's breathtaking. And each time, hey, judge, I've had some severe personal issues. Can we kick this down the road a little bit? And meanwhile, in that very same time frame, we're getting pictures that are in the record from Las Vegas where his company, he's there at the trade show or folks that he's aligned with are at the trade show just continuing their sales activities that are not, you know, kind of the crux of this case. So it's a willful decision not to devote time and energy to this lawsuit but to do something else. I think our briefs, we parsed the case law on the definition of willfulness and simply saying, well, you know, I didn't have time to do it or I think Judge Neufer's order makes it difficult for me. That's not enough. What does the record show about his having people in Vegas? So he filed, post-judgment, he filed two motions to strike. And I think this would have been his opportunity to additionally raise some things that he wants to raise on appeal. He could have filed a rule of- No, no, I'm getting there. Okay. So he, instead of, you know, raising any of these issues, he raised issues with respect to the proposed orders that were filed in the district court. And in response to those, we entered certain affidavits along with pictures of the then activities that were going on at these trade shows. And we mentioned those in our briefs. They weren't, you know, they didn't oppose. They didn't move to strike those and say, well, those aren't authentic or that's not really me. Is that before the judge when he imposed the sanction? Yeah, that's before the judge. Before he imposed the sanction? No, but there's other activities that are already apparent from the record when he imposed the January 2007- Did the judge mention those, make any findings? No. Does the judge, is there anything to show that the judge relied on- Yeah, well, again, you go back to the docket entry number 928 and 950, where the judge dealt with the Ehrenhaus factors and looked at those activities and dealt with them at length. And if you'd like, I have a few minutes left, the extraterritoriality, you know, as I read their reply, they're asking this court to re-weigh those three factors on appeal after not even during the time they were well represented in the district court, that they never made an issue of this. And I don't see how that's possible under this court's approach to forfeiture and waiver. They didn't raise the argument below it's a three-part weighing. And then here on appeal, they didn't argue plain error. So I just don't see how you get there. I don't see how you get to their Rule 65 argument, which is about the scope of the in concert liability. Again, they had able attorneys during the fall of 2016. They had the proposed order right in front of them. They made certain objections to the proposed order, but that wasn't one of them. So if you want to argue something on appeal, you've got to present it to the district judge. And, you know, they've done a commendable job swooping in here and finding some issues, but they're unfortunately just all at this point waive because they didn't argue plain error. What about standing? Is there standing? I think there's certainly no standing to make arguments on behalf of the entities. What about redressability? What difference would it make? If he would weigh in this appeal, then he's going to get socked through the corporations. Yeah. I think my argument in the opposition brief may have been a slight overreach because they are looking to set aside the default judgment, and the default judgment is where the alter ego findings are contained. So if they were successful in convincing this court that that was an abuse of discretion, then those alter ego findings would go away. But they certainly can't now in a reply brief purport to represent the entities. That's something that we pointed out in the opposition. We said, you've waived that opportunity. That's not an alter ego claim. That's an alter ego claim exists to get down to the individual. It doesn't give the individual the right to go up to the entity and control their claims, especially when that claim has never been made below. So I think to the extent that he is personally affected by these, there is an individual claim there that he has standing, notwithstanding my argument in the brief, which was based on his failure to challenge the alter ego findings. But that's a pretty narrow sliver in the scope of this case because the entities didn't file a notice of appeal, never appeared, and so the court just doesn't have jurisdiction to consider any of those arguments. So what does he have standing to pursue? So he has standing to, I believe, argue that it was an abuse of Judge Newford's discretion to strike some of his pleadings in August 2016 based on a thorough landing, strike more in October 2016 based on the same weighing of Ehrenhaus, and then go the extra mile in January and say, OK, now I'm going to enter default because you just aren't responsive to my orders. Could I ask a question about one of the cases we're taking on the briefs? Sure, although now I'm going to be in your position and say I'm not quite sure that I'm going to have a good answer. You bailed him out, so maybe he'll tell you. I hope so. Sure. Two of the challenges to the injunction were that you can't enjoin state court proceedings. You had an Anti-Injunction Act claim, among others. It wasn't clear to me that the injunction prohibited anything going on in the state court, and it certainly didn't seem to me that Mr. Anderer was found in contempt for doing anything in the state court. Am I missing something? I couldn't understand. Those are very interesting arguments. I can see why they applied here. We were just getting involved in the case at that moment, and it was one of these cases that comes in and you have a file of four or five different dockets that each have 1,000 entries in it. So I think our main argument about that injunction or the way it was applied was it, on its face, said, you can transfer these assets when they're in connection with a foreclosure sale, and that's exactly what my client did, and Judge Neufer held him in contempt. And everyone knew that that was going to happen, and the other side objected. They wanted that order adjusted because they said, if you do this, he's going to be able to do exactly what he did. And then he did exactly what everyone thought he was going to do, and then all of a sudden Judge Neufer held him in contempt. So I think that's the main thrust of our argument there, and there was a state court proceeding. There was a bankruptcy proceeding. There was this federal court proceeding, and I know there were foreclosure components in each, so I'm assuming that's why we made that argument. But if there – you know, I have 20 more seconds, but if there's nothing further, I'd be happy to submit. Thank you. Thank you. My client, Mr. Marshall, is personally harmed by the default judgment which resulted in or from the notice of default, the default being entered. Hence, he is harmed. He has standing before this court. My client is Mr. Marshall, not the business entities, but still he's arguing on behalf of himself that he's going to be hurt unless this gets fixed. Tell me, how hard would it have been for Judge Neufer to respect this court and list those factors out of the Ehrenhaus case, find the findings, if they exist? I tell you, I believe they don't exist. Hence, we need to fix this situation. Had anything really changed from the time he already discussed it in the previous orders? The law didn't change. He was well aware of the law, and hence, I think as a matter of justice, he should have laid that out so the whole world would know that he had considered them. Also, I see the other side wants it both ways. He either wants my client to retain counsel or he wants him to not go out and earn money by selling product and promoting product so he can retain counsel. It's hard to live both ways. If you're out doing business, you go out and do business so you can retain counsel. Any questions, Your Honor? Thank you, counsel. Thank you very much for your patience. Time has expired. We appreciate the arguments. Those were valuable. And counsel, you're excused. Appreciate the arguments again. And the court will be in recess until tomorrow morning at 8.30.